IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Sanchez, | ) No. CV 04-2889-PHX-SRB (HCE) |
| Petitioner, | ) **REPORT & RECOMMENDATION** |
| vs. | ) |
| Warden Bartos, et. al., | ) |
| Respondents. | ) |

Pending before the Court is Petitioner's *pro se* Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Pursuant to the Rules of Practice of this Court, this matter was referred to the undersigned Magistrate Judge on May 13, 2005.

For the following reasons, the Magistrate Judge recommends that the District Court deny the Petition.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Petitioner's Conviction and Summary of the Case

Petitioner Christopher Sanchez has filed the instant Petition regarding convictions arising from his simultaneous entry of guilty pleas pursuant to two plea agreements in Arizona state court for two separate cases: one involved events occurring on October 30, 2000 (hereinafter "CR2000-018114"); and the other involved events occurring on November 10, 2000 (hereinafter "CR2000-017811").  (Answer, Ex. A, N, O) In CR2000-018114,

Petitioner was charged with burglary, armed robbery and kidnapping resulting from allegations that Petitioner and a co-defendant invaded a family's home, held guns on the occupants, stole personal property and the family's car, a Honda Civic.  (Answer, Ex. AA) In CR2000-017811, Petitioner and a co-defendant were charged with  armed robbery,  two counts of theft of means of transportation, two counts of aggravated assault, and unlawful flight from law enforcement resulting from allegations that eleven days after the home invasion, police officers saw Petitioner and co-defendant driving the stolen Honda; while fleeing from police pursuit, Petitioner and co-defendant collided with another vehicle; Petitioner and co-defendant then exited the stolen Honda and, at gunpoint, pulled the occupants from that other vehicle and Petitioner and co-defendant then drove off in it. (Answer, Ex. D,  E, F, AA) The prosecution alleged that the armed robbery and aggravated assault involved the "discharge, use, or threatening exhibition of a deadly weapon or dangerous instrument, to wit: a gun."  (Answer, Ex. G) The prosecution also alleged that Petitioner had two prior felony convictions and that the crimes in CR2000-017811 were committed while Petitioner was on release from confinement pursuant to A.R.S. § 13-604.02(B).  (Answer, Ex. E, H, I)

On February 14, 2001 Petitioner entered a guilty plea in CR2000-017811 to one count of armed robbery and a guilty plea in CR2000-018114 to one count of armed robbery. (Answer, Ex. N, O) Pursuant to both plea agreements: (1) Petitioner would be sentenced to "A TERM NO LESS THAN THE PRESUMPTIVE"; (2) the sentences were to run concurrently; and (3) all other charges against Petitioner in both cases were to be dismissed. (Answer, Ex. A, N, O, Q, R) (emphasis in original) The trial court sentenced Petitioner to two aggravated sentences of 18 years of incarceration to run concurrently.  (Answer, Ex. Q, R.)

B.  Post-Conviction Proceedings

The trial court appointed counsel to represent Petitioner during post-conviction relief proceedings.  (Answer, Ex. V) Thereafter, Petitioner's counsel filed a Notice of Completion

of Post-Conviction Review indicating that upon review of the record, she was "unable to find any claims for relief to raise in post-conviction relief proceedings" and requesting that Petitioner be permitted to file a *pro se* petition for post-conviction relief.  (Answer, Ex. W) The trial court granted counsel's request.  (Answer, Ex. X).  On June 25, 2002, Petitioner filed a *pro se* Petition for Post-Conviction Relief (hereinafter "PCR Petition").  (Answer, Ex. Y) Petitioner's PCR Petition consisted of a form on which Petitioner checked boxes indicating his grounds for relief, written  argument, and exhibits.  Petitioner checked boxes indicating that he was "eligible for relief because of:"

> 1.    "The denial of the constitutional right to representation by a competent lawyer at every critical stage of the proceeding"; and
>
> 2.    "The use by the state in determining sentence of a prior conviction obtained in violation of the United States of Arizona [sic] constitutions".[1]

(Id.) Petitioner argued that pursuant to the plea agreement, prior felony convictions were not to be used against him at sentencing, yet, during sentencing, the prosecutor argued that the prior convictions should factor into the court's sentencing decision.  Petitioner further stated that: it was his intention to proceed to trial on the home invasion charge and to plea "on the other case" but his attorney told him that he had to either enter a plea in both cases or proceed to trial in both cases; "I wasn't helped in any way with my case, I was rushed into both plea bargains...I'm doing 18 years which is a lot of time"; "[t]here's been so many mistakes with the prosecuting attorney," and Petitioner's own attorney; and his co-defendant received "10.5 years" even though there was no difference between their plea agreements.  (Id.)  Petitioner requested a "[c]orrection of sentence...'time reduction.'"  (Id.)

On October 16, 2002, the trial court dismissed Petitioner's PCR Petition.  (Answer, Ex. CC) In reaching this conclusion, the trial court found that Petitioner

---

[1]Elsewhere in the record, Petitioner restated this claim as: "The use by the state in determining sentence of a prior conviction obtained in violation of the United States of Arizona [sic] constitutions."  (Answer, Ex. DD)

was sentenced in accordance with the terms of the Plea Agreement after pleading guilty to crimes that were not enhanced by allegations of prior convictions under A.R.S. 13-604.  The fact that the State advised the Court of [Petitioner's] prior convictions and argued they should be considered in imposing a sentence within the Plea Agreement did not violate the Plea Agreement in any manner.
***
The Court is [sic] exercising its sentencing discretion was under no duty to impose an identical sentence on co-defendant.  Both received substantial prison sentences.  The sentencing considerations brought to the Court's attention were not identical.

(Id.)  The court also found that Petitioner "failed to raise any viable issue which would justify holding an evidentiary hearing."  (Id.)

On November 12, 2002, Petitioner sought appellate review of the trial court's decision.  (Answer, Ex. DD) In his petition for appellate review, Petitioner argued that the trial court improperly rejected his contentions regarding:

1.    "The denial of the constitutional right to representation by a competant [sic] lawyer at every critical stage of the proceeding"; and

2.    "The use by the state in determining sentence of a prior conviction obtained in violation of the United States of Arizona [sic] constitutions."

(Id.)

On January 6, 2004, the Arizona appellate court denied review.  (Answer, Ex. GG)

C.  Petitioner's Petition for Writ of Habeas Corpus

On December 13, 2004, Petitioner filed the instant Petition for Writ of Habeas Corpus.  Petitioner raises the following claims:

1.    "The denial of the constitutional right to be represented by a competent lawyer at every critical stage of the proceeding.  Amendment VI." (Petition, p.5);

2.    "The use by the state in determing [sic] sentence of a prior conviction obtained in violation of the United States of Arizona [sic] constitutions.  Amendment V." (Petition, p.6).

On July 29, 2005, Respondents filed their Answer.  Respondents concede that the Petition is timely filed.  (Answer, p.6)  Respondents argue that Petitioner's claims are

procedurally defaulted resulting from his failure to exhaust his claims in state court and, alternatively, that Petitioner's claims are not cognizable as federal habeas claims and/or lack merit.

On October 31, 2005, Petitioner filed a Traverse.

## II.  DISCUSSION

### A.  Standard: Exhaustion and Procedural Default

A federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted the state court remedies available to him.  28 U.S.C. § 2254(b); *Baldwin v. Reese,* 541 U.S. 27 (2004); *Castille v. Peoples,* 489 U.S. 346 (1989).  The exhaustion inquiry focuses on the availability of state court remedies at the time the petition for writ of habeas corpus is filed in federal court.  *See O'Sullivan v. Boerckel,* 526 U.S. 838 (1999).  Exhaustion generally requires that a prisoner give the state courts an opportunity to act on his claims before he presents those claims to a federal court.  *Id.*  A petitioner has not exhausted a claim for relief so long as he has a right under state law to raise the claim by available procedure. *See* Id.; 28 U.S.C. § 2254(c).

A habeas petitioner may exhaust his claims in one of two ways.  First, a claim is exhausted when no remedy remains available to the petitioner in state court.  *See* 28 U.S.C. § 2254(b)(1)(A).  Second, a claim is exhausted if there is an absence of available state corrective process or circumstances exist that render such process ineffective to protect the rights of the petitioner.  *See* 28 U.S.C. § 2254(b)(1)(B).

To meet the exhaustion requirement, the petitioner must have "fairly present[ed] his claim in each appropriate state court...thereby alerting that court to the federal nature of the claim." *Baldwin,* 541 U.S. at 29; *see also Duncan v. Henry,* 513 U.S. 364, 365-66 (1995). A petitioner fairly presents a claim to the state court by  describing the factual or legal bases for that claim and by alerting the state court "to the fact that the...[petitioner is] asserting claims under the United States Constitution." *Duncan,* 513 U.S. at 365-366.  *See also Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001) (same).   Mere similarity between a

claim raised in state court and a claim in a federal habeas petition is insufficient. *Duncan,* 513 U.S. at 365-366.

Furthermore, to fairly present a claim, the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845. Once a federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied. *See Picard v. Connor,* 404 U.S. 270, 275 (1971). In habeas petitions, other than those concerning life sentences or capital cases, the claims of Arizona state prisoners are exhausted if they have been fairly presented to the Arizona Court of Appeals either on appeal of conviction or through a collateral proceeding pursuant to Rule 32 of the Arizona Rules of Criminal Procedure.[2] *Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir. 1999), *cert. denied* 529 U.S. 1124 (2000).

In some instances a claim can be technically exhausted even though the state court did not address the merits. This situation is referred to as "procedural bar" or "procedural default." A claim is procedurally defaulted if the state court declined to address the issue on the merits for procedural reasons. *Franklin v. Johnson,* 290 F.3d 1223, 1230 (9th Cir. 2002). Procedural default also occurs if the federal claim was not presented to the state court and it is clear the state would now refuse to address the merits of the claim for procedural reasons. *Id.* The procedural bar provides an independent and adequate state-law ground for the conviction and sentence and, thus, prevents federal habeas corpus review unless the petitioner can demonstrate cause and prejudice for failing to raise the federal claim in the state proceedings. *Gray v. Netherland,* 518 U.S. 152, 161-162 (1996); *see also Murray v. Carrier,* 477 U.S. 478, 485-495 (1986); *Franklin*, 290 F.3d at 1231. Accordingly, the procedural default doctrine prevents state prisoners from obtaining federal review by

---

[2]Respondents argue that *Baldwin* "appears to overrule" *Swoopes* and, thus, to satisfy the exhaustion requirement Petitioner herein must present his claim to the Arizona Supreme Court. (Answer, pp. 10-14) That argument is addressed *infra* at Section C.1.

allowing the time to run on available state remedies and then rushing to federal court seeking review. *Coleman v. Thompson,* 501 U.S. 722, 731-732 (1991).

If a claim has never been presented to the state court, a federal habeas court may determine whether state remedies remain available.[3] *See Harris v. Reed,* 489 U.S. 255, 263 n.9 (1989); *Franklin,* 290 F.3d at 1231. In Arizona, such a determination often involves consideration of Rule 32 *et seq.* of the Arizona Rules of Criminal Procedure governing post-conviction relief proceedings. For example, Ariz.R.Crim.P. 32.1 specifies when a petitioner may seek relief in post-conviction proceedings based on federal constitutional challenges to convictions or sentences. Under Rule 32.2, relief is barred on any claim which could have been raised in a prior Rule 32 petition for post-conviction relief, with the exception of certain claims[4] which were justifiably omitted from a prior petition. Ariz.R.Crim.P. 32.2.

In summary, failure to exhaust and procedural default are different concepts. *Franklin*, 290 F.3d at 1230-1231. Under both doctrines, the federal court may be required to refuse to hear a habeas claim. *Id.* The difference between the two is that when a petitioner fails to exhaust, he may still be able to return to state court to present his claims there. *Id.*

---

[3]Although the Ninth Circuit recently suggested that under Ariz.R.Crim.P. 32.2, there are exceptions to the rule that a district court can decide whether state remedies remain available for claims that require a knowing, voluntary, and intelligent waiver *see Cassett v. Stewart*, 406 F.3d 614 (9th Cir. 2005), *cert. denied,* __ U.S. __, 126 S.Ct. 1336 (2006), this Court need not address such waiver because it has not been affirmatively raised by Petitioner. *See Beaty v. Stewart,* 303 F.3d 975, 987 & n.5 (9th Cir. 2002), *cert denied,* 538 U.S. 1053 (2003).

[4]Such claims include that: (1) the petitioner is being held in custody after his sentence has expired; (2) certain circumstances where newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence; (3) the petitioner's failure to file a timely notice of post-conviction relief was without fault on his part; (4) there has been a significant change in the law that would probably overturn petitioner's conviction if applied to his case; and (5) the petitioner demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found petitioner guilty beyond a reasonable doubt. Ariz.R.Crim.P. 32.2(b) (citing Ariz.R.Crim.P. 32.1(d)-(h)).

In contrast, "[w]hen a petitioner's claims are procedurally barred and a petitioner cannot show cause and prejudice for the default...the district court dismisses the petition because the petitioner has no further recourse in state court." *Id.* at 1231.

B.  Standard: Review of Merits

Pursuant to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), the Court may grant a writ of habeas corpus only if the state court proceeding:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court and section 2254(d)(2) applies to purely factual questions resolved by the state court.  *Lambert v. Blodgett,* 393 F.3d 943, 978 (9th Cir. 2004), *cert. denied __ U.S. __,* 126 S.Ct. 484 (2005).  Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts.  *Rice v. Collins,* __ U.S. __, 126 S.Ct. 969 (2006).  In conducting its review, the Court "look[s] to the last-reasoned state-court decision."  *Van Lynn v. Farmon,* 347 F.3d 735, 738 (9th Cir. 2003) *cert. denied* 541 U.S. 1037 (2004).

Section 2254(d)(1) consists of two alternative tests, i.e., the "contrary to" test and the "unreasonable application" test.  *See Cordova v. Baca,* 346 F.3d 924, 929 (9th Cir. 2003). Under the first test, the state court's "decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Clark v. Murphy,* 331 F.3d 1062, 1067 (9th Cir. 2003) (citing *Williams v. Taylor,* 529 U.S. 362, 413-414 (2000)).  Additionally, a state court's decision is "'contrary to' Supreme Court case law if the state court 'applies a rule that

contradicts the governing law set forth in' Supreme Court cases."[5]  *Van Lynn,*  347 F.3d at 738 (quoting *Early v. Packer,* 537 U.S. 3, 8 (2002)).  "Whether a state court's interpretation of federal law is *contrary* to Supreme Court authority...is a question of federal law as to which [the federal courts]...owe no deference to the state courts." *Cordova,*  346 F.3d at 929 (emphasis in original) (distinguishing deference owed under the "contrary to" test of section (d)(1) with that owed under the "unreasonable application" test).

Under the second test, " '[a] state court's decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle...but unreasonably applies that principle to the facts of the prisoner's case.'" *Van Lynn*, 347 F.3d at 738 (quoting *Clark,* 331 F.3d at 1067). Under the "'unreasonable application clause...a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly...[r]ather that application must be objectively unreasonable.'" *Clark,* 331 F.3d at 1068 (quoting *Lockyer v. Andrade,* 538 U.S. 63 (2003)). When evaluating whether the state decision amounts to an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law." *Cordova,* 346 F.3d at 929.

Under section 2254(d)(2), which involves purely factual questions resolved by the state court,  "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." *Lambert,*  393 F.3d at 978; *see also Taylor v. Maddox,* 366 F.3d 992, 999 (9th Cir.),

---

[5]"[T]he *only* definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams,* 529 U.S. at 412...While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, *Duhaime v. Ducharme,* 200 F.3d 597, 600-01 (9th Cir.1999), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." *Clark,* 331 F.3d at 1069 (emphasis in original).

*cert. denied* 534 U.S. 1038 (2004) ("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable.") Section (d)(2) "applies most readily to situations where petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence,...that the process employed by the state court is defective,...or that no finding was made by the state court at all." *Taylor,* 366 F.3d at 999 (citations omitted). In examining the record under section 2254(d)(2), the federal court "must be particularly deferential to our state court colleagues... [M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that *any* appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" *Lambert,* 393 F.3d at 972 (*quoting Taylor,* 366 F.3d at 1000) (emphasis in original). Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness, which then helps steel them against any challenge based on extrinsic evidence, i.e., evidence presented for the first time in federal court."[6] *Taylor,* 366 F.2d at 1000. *See also* 28 U.S.C. section 2254(e).

Both section 2254(d)(1) and (d)(2) may apply where the petitioner raises issues of mixed questions of law and fact. Such questions "receive similarly mixed review; the state court's ultimate conclusion is reviewed under [section] 2254(d)(1), but its underlying factual

---

[6]Under section 2254(e) "a determination of a factual issue made by a State court shall be presumed to be correct." The "AEDPA spells out what this presumption means: State-court fact-finding may be overturned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state-court finding is in error....Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once" it is found that the state court reasonably determined the facts in light of the evidence presented in the state proceeding. *Taylor,* 366 F.3d at 1000.

findings supporting that conclusion are clothed with all of the deferential protection ordinarily afforded factual findings under [sections] 2254(d)(2) and (e)(1)." *Lambert,* 393 F.3d at 978.

    C.  Review of Petitioner's Claims

        1.  Exhaustion: failure to seek review before the Arizona Supreme Court

    Respondents argue that Petitioner failed to exhaust his claims for relief because he did not seek review before the Arizona Supreme Court as required by *Baldwin v. Reese*, 541 U.S. 27. (Answer, pp. 10-14)  In *Baldwin*, the Supreme Court reviewed a decision from the Ninth Circuit to address the question of what constituted notice of the federal nature of a claim sufficient to satisfy the fair presentment requirement found in 28 U.S.C. § 2254(b)(1).  In setting out the groundwork for its decision, the Supreme Court stated that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin,* 541 U.S. at 29 (citations omitted).  Respondents rely on the *Baldwin* Court's general statements of the law of exhaustion and assert that they support a finding that *Swoopes*, at least insofar as it addresses whether habeas petitioners must seek review in the highest state court, is no longer valid.[7]  However, an examination of the rationale employed in the *Swoopes* decision readily distinguishes that case from the general statements of law referred to by Respondents.

    *Swoopes,* which examines the habeas exhaustion requirement specifically with regard to Arizona's discretionary review system, was decided on remand to the Ninth Circuit for consideration in light of the Supreme Court's decision in the *O'Sullivan* case.  *Swoopes,* 196 F.3d 1008.  In *Swoopes*, the Ninth Circuit, like the *Baldwin* Court, began its analysis by reiterating the general rule stated in *O'Sullivan* that, "in order to satisfy the exhaustion requirement for federal habeas relief, state prisoners must file for discretionary review in a

---

    [7]Under *Swoopes,* Petitioner  herein need only seek review from the Arizona Court of Appeals and not the Arizona Supreme Court.

state supreme court when that review is part of ordinary appellate review." *Swoopes*, 196 F.3d at 1009 (*citing O'Sullivan,* 526 U.S. at 847).  The *Swoopes* court recognized, however, that the Supreme Court in *O'Sullivan* had "acknowledged an exception to the exhaustion requirement," by making it clear that "'the creation of a discretionary review system does not, *without more*, make review' in a state supreme court 'unavailable.'" *Swoopes*, 196 F.3d at 1009 (*quoting O'Sullivan*, 526 U.S. at 847) (emphasis added in *Swoopes*).  The Ninth Circuit proceeded to consider Arizona's discretionary review system and found that Arizona case law made it clear that "in cases not carrying a life sentence or the death penalty, review need not be sought before the Arizona Supreme Court in order to exhaust state remedies." *Swoopes*, 196 F.3d. at 1010.  Thus, the court concluded, "post-conviction review before the Arizona Supreme Court is a remedy that is 'unavailable' within the meaning of *O'Sullivan*." *Id.*  There is nothing in *Baldwin* that suggests, implicitly or explicitly, that this analysis is flawed or that the *Swoopes* holding has been overruled.

Moreover, the Ninth Circuit continues to cite *Swoopes* for the very proposition Respondents suggest was overruled. *See Castillo v. McFadden*, 399 F.3d 993,  998 n.3 (9th Cir. 2005) ("[i]n cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" (*quoting Swoopes,* 196 F.3d at 1010)).  Therefore, Respondents do not prevail with their argument that Petitioner's claims are unexhausted because he failed to seek review before the Arizona Supreme Court.

### 2.  Claim One: Ineffective Assistance of Counsel

Petitioner alleges that he was denied the "constitutional right to be represented by a competent lawyer at every critical stage of the proceeding.  Amendment VI." (Petition, p. 5)

### a.  Exhaustion and Procedural Default

Petitioner raised the issue of ineffective assistance of counsel in his PCR Petition by: checking a box indicating that he was denied "the constitutional right to representation by

a competent lawyer at every critical stage of the proceeding." (Answer, Ex. Y) In his written statement accompanying the PCR form petition, Petitioner makes no specific reference to an ineffective assistance of counsel claim; however, Petitioner's comments appear to address the alleged ineffectiveness of his counsel. (Id.)  Additionally, Petitioner's petition for review by the Arizona appellate court states that he was denied his "constitutional right to representation by a competent lawyer at every critical stage of the proceeding." (Answer, Ex., DD)

A habeas petitioner fairly presents a federal claim only if he alerts the state court to the federal nature of his claim. *Fields v. Waddington,* 401 F.3d 1018, 1021 (9th Cir.) *cert. denied,* __ U.S. __, 126 S.Ct. 738 (2005). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin,* 541 U.S. at 32.   Petitioner herein did not identify the federal basis for his claim. He did not cite state or federal cases that would alert the state court to his federal claim.  Nor did he label "the claim 'federal'" or in any other way indicate the federal nature of his claim. *Id.* Respondents also correctly point out that neither the prosecution in its response to Petitioner's PCR Petition nor the state court addressed Petitioner's claim as a federal claim. (Answer, p.15 )(citing Ex. AA, CC) Under such circumstances, where Petitioner has not fairly alerted the state court to the federal nature of his claim, such claim is unexhausted for federal habeas purposes.  Further, Petitioner herein is now barred pursuant to Rule 32.2(a) of the Arizona Rules of Criminal Procedure from returning to state court.  *See Coleman,* 501 U.S. at 732, 735 n.1.  *See also Franklin*, 290 F.3d at 1230-1231.  Petitioner also fails to show cause or prejudice for the default.

b.       Respondents' alternative argument on the merits

The Ninth Circuit has recognized that "[t]he Supreme Court has left open the question whether raising a state claim that is 'identical' to a federal claim suffices to fairly present the federal claim." *Fields,* 401 F.3d at 1022 (*citing Baldwin,* 541 U.S. at 34).   Petitioner herein does not argue that he has raised identical state and federal claims.  Even assuming that the Arizona state court treats ineffective assistance of counsel claims "under the federal and state constitutions as coextensive," Respondents are correct that Petitioner's claim fails on the merits.[8]  *Id.*

In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court established a two-part test for evaluating ineffective assistance of counsel claims.  The *Strickland* test applies to a petitioner's challenge of his guilty plea based upon ineffective assistance of counsel.  *Washington v. Lampert,* 422 F.3d 864, 872 (9th Cir. 2005), *cert. denied* __ U.S. __ 126 S.Ct. 1778 (2006), (*citing Hill v. Lockhart,* 474 U.S. 52 (1985)).  In such a context, "the ineffectiveness inquiry probes whether the alleged ineffective assistance impinged on the [petitioner's] ability to enter an intelligent, knowing and voluntary plea of guilty." *Lampert,* 393 F.3d at 980.  To prevail, Petitioner must show that: (1) counsel's representation fell below the range of competence demanded of counsel in criminal cases; and (2) the Petitioner suffered actual prejudice as a result of counsel's incompetence.  *Id.; Washington,* 422 F.3d at 873.

To establish deficient performance, Petitioner must show that counsel made errors so serious "that counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms.  *Strickland,* 466 U.S. at 687-688.  The relevant inquiry is not what defense counsel could have done, but rather whether the decisions made by defense counsel were reasonable.  *Babbit v. Calderon,* 151 F.3d 1170, 1173 (9th Cir. 1998);

---

[8]Pursuant to the AEDPA, the Court may deny the petition for writ of habeas corpus "on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

*Turner v. Calderon,* 281 F.3d 851, 880 (9th Cir. 2002) ("in plea situations...the question [is] not whether counsel's advice [was] right or wrong, but...whether that advice was within the range of competence demanded of attorneys in criminal cases.") In considering this factor, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland,* 466 U.S. at 690. The Ninth Circuit "h[as] explained that '[r]eview of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation.'" *Ortiz v. Stewart,* 149 F.3d 923, 932 (9th Cir. 1998) (quoting *Hensley v. Crist,* 67 F.3d 181, 184 (9th Cir. 1995)). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison,* 477 U.S. 365, 381 (1986). Additionally, "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689.

In the context of a guilty plea, "'[i]n order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.'" *Lambert,* 393 F.3d at 980 (*quoting Hill,* 474 U.S. at 59). *See also Washington,* 422 F.3d at 873 (same).

Because failure to make the required showing of either deficient performance or prejudice defeats the claim, the court need not address both factors where one is lacking. *Strickland,* 466 U.S. at 697-700.

In the instant Petition, Petitioner states:

> [t]hroughout my case I was clueless...of things going on.  I was told I would receive 10.5 years, specialy [sic] after going through a metigated [sic] hearing.  My sentence was agravated [sic] I received 18 years.  I was dealing with two separate cases that occurred on two different dates.  On one of those cases I was innocent.  I was lead [sic] to believe if I took that case to trial I would be forced to take both to trial.  I had no choice.  Based on what my Public Defender told me I pled guilty to both cases under a plea agreement.  I was

young; and knew nothing of what was going on.  I was taken advantage of, I knew nothing of what I was going through.

(Petition, p.5).

Petitioner points to no evidence demonstrating that his agreement to enter the plea was not voluntary, knowing or intelligent.  *See Washington,* 422 F.3d at 873 (denial of habeas relief on ineffective assistance of counsel claim where plea colloquy revealed that state court "explained the rights that [petitioner] was agreeing to waive...and that [petitioner] understood the nature of the waiver.")   The transcript of the colloquy demonstrates that the trial court explained the rights that Petitioner was agreeing to waive, including his right to a jury trial, and that Petitioner understood the nature of the waiver. (Answer, Ex. A) The trial court also specifically addressed the applicable range of sentence:

> Both plea agreements provide that you're to be sentenced to the Department of Corrections for a term of *no less than the presumptive sentence,...which, by the way, is a 10-and-a-half-year sentence.  When I say no less, that means that you're agreeing to receive a sentence of somewhere between 10 and a half and 21 years.*  Is that your understanding?

(Id. at p.5) (emphasis added).  Petitioner answered, "Yes." (Id.)  During the proceeding, the trial court  established that Petitioner was 18 years old, was not on any drugs or medications, had completed ninth grade, had not been promised anything that was not in the plea agreement, had not been threatened into giving up his right to a jury trial, and wished to plead guilty to the charges at issue.  At the conclusion of the proceeding, the trial court found that Petitioner's "pleas are made knowing, intelligently and voluntarily.  The Court finds there are factual bases to accept the pleas. "  (Id. at p.11)

Petitioner has neither alleged nor demonstrated that but for counsel's alleged incompetence, he would not have pled guilty.  That Petitioner desired to enter a guilty plea in one case and proceed to trial in the other does not establish counsel's ineffectiveness given Petitioner's concession that the state extended a package deal, i.e. the plea offer required him "to plea on both or go to trial on both." (Answer, Ex. Y)  Petitioner's counsel met his duty by conveying to Petitioner the information that Petitioner was entitled to have, that is the plea

offer, and explained to Petitioner that his option was to go to trial in both cases or plea to both cases. *Compare Turner*, 281 F.3d at 880-881 (petitioner's counsel was not ineffective given that counsel, among other things, conveyed the plea offer to defendant) *with Nunes v. Mueller,* 350 F.3d 1045 (9th Cir. 2003) (claim of ineffective assistance of counsel may lie where counsel failed to accurately convey terms of a plea offer); *United States v. Blaylock,* 20 F.3d 1458 (9th Cir. 1994) (counsel's failure to communicate plea offer to defendant satisfied the first part of the *Strickland* test). The record establishes that Petitioner exercised the option to plea to both cases.  That defense counsel could not broker the plea agreement that Petitioner desired, does not in and of itself establish that counsel's assistance was not within the range of competence demanded of counsel in criminal cases.  The result obtained by Petitioner's defense counsel was considerably more favorable than what Petitioner would have faced had he gone to trial in one case.  Had Petitioner been convicted at trial on either one of the criminal cases and the prosecutor had proven two historical dangerous prior convictions (*See* Answer, Ex. I (allegation of historical dangerous priors)), Petitioner would have faced 21 to 35 years of incarceration with a presumptive sentence of 28 years. *See* A.R.S. §13-604(K).  Moreover, had the prosecution also proven that Petitioner committed a felony while under release status Petitioner would have been facing an additional two years incarceration consecutive to the sentence imposed on underlying charge. *See* A.R.S. § 13-604(R).

The plea colloquy undercuts Petitioner's statement that "I agreed with everything in the plea agreement due to the fact, I had already been informed I would only receive 10.5 years." (Traverse, p. 3) The record reflects that Petitioner was fully advised that he faced a potential sentence from 10.5 years to 21 years and Petitioner stated that this was his understanding as well.[9] (Answer, Ex. A at p.5)  Petitioner also stated that no other promises

---

[9]The plea agreement also provided that the prosecutor would not allege Petitioner's prior felony convictions.  (Answer, Ex. N) Review of the both plea agreements indicates that the prosecutor would "not allege [Petitioner's] prior felony convictions or that he was on

had been made to him.  (Id. at p.6) Petitioner's contemporaneous statements regarding his understanding of the plea agreement carry substantial weight in determining whether his entry of a guilty plea was knowing and voluntary.  *See Blackledge v. Allison,* 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *United States v. Mims,* 928 F.2d 310, 313 (9th Cir. 1991) ("We attach substantial weight to contemporaneous on-the-record statements in assessing the voluntariness of pleas.") Petitioner has established no facts which support a finding of ineffective assistance of counsel on this issue.

---

parole at the time of" the offenses.  (Id.) At the sentencing, the prosecutor advised the court of Petitioner's prior felony convictions and argued that they should be considered in imposing a sentence within the range specified in the plea agreements.  Petitioner was sentenced within that range. Had the prosecutor alleged Petitioner's prior felony convictions in order to enhance his sentence, Petitioner would have been subjected to a higher range of possible incarceration than that specified in the plea agreements.  Such an act would have been outside the terms of the plea agreements. That did not happen here.  Instead, the prosecutor discussed Petitioner's prior felony convictions when arguing that Petitioner should receive the higher end of the range specified in the plea agreements.  (*See* Answer, Ex. B)  The trial court stated to Petitioner that it was "going to impose an aggravated sentence, and this sentence is going to be fairly close to the sentence that your co-defendant received in terms of the number of  years, and that I believe that, regardless of how you slice it, who did what, that the sentence in these cases should have some parity in terms of the number of years to be served.  The aggravated circumstances here, that outweigh the mitigating circumstance of age, is that this involves accomplices.  It involved an extreme effect and lasting and permanent effect of the victims...The Court is also sentencing you in consideration of the fact that weapons were held by you and co-defendant and used in a manner which created extreme danger to the individuals who are listed as victims." (Answer, Ex. B, pp. 19-20) The court also noted that on the charges in common with Petitioner, the co-defendant was sentenced to two terms of 10.5 years to run concurrently and was given 3.5 years each on two other matters–all the sentences to run consecutive, for a total of 17.5 years of incarceration. (Id. at p. 16) Petitioner's sentence to 18 years of incarceration was within the range identified in the plea agreements .  (*See* Answer, Ex. A)

Further, Petitioner's assertion that he was young and knew nothing of what was going on, without more does not establish ineffective assistance of counsel in light of the plea colloquy and the entire record before the Court.  It is well-settled that "[c]onclusory allegations [of ineffective assistance of counsel] which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg,* 24 F.3d 20, 27 (9th Cir. 1994); *see also Strickland,* 466 U.S. at 690 (a petitioner "making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment").

On this record, Petitioner has not established that his counsel's performance was deficient.  Nor has Petitioner established that absent his counsel's actions Petitioner would have rejected the plea agreement and continued to trial facing a presumptive term of at least 28 years in either case.

It is unclear whether the state trial court addressed Petitioner's ineffective assistance of counsel claim.  The court made no specific reference to such claim.  Instead, the October 16, 2002 order dismissing Petitioner's PCR Petition primarily addressed Petitioner's dissatisfaction with his sentence and the state's reference to his prior felony conviction at sentencing.  The court also stated: "THE COURT FINDS the defendant has failed to raise any viable issue which would justify holding an evidentiary hearing."  (Answer, Ex. CC) (emphasis in original)   Respondents herein state that the trial court "saw the claims raised by Petitioner as a question of Petitioner's awareness and unhappiness with his *sentences*, not with any other aspect of his representation."  (Answer, p.15) (emphasis in original)

As set forth *supra* in section II.B., the AEDPA limits federal court review to the last reasoned state-court decision. *Van Lynn,* 347 F.3d at 738.  To the extent that the state court's last reasoned decision provides no reason for its decision on the federal claim, "an independent review of the record is necessary." *Greene v. Lambert,* 288 F.3d 1081, 1089-1090 (9th Cir. 2002).

Based on this Court's review of the record and pertinent authority as set forth above, to the extent that the state court's October 16, 2002 Order dismissing Petitioner's PCR Petition  may be construed as a ruling on the merits dismissing Petitioner's ineffective assistance of counsel claim, that decision was not contrary to, or an unreasonable application of, clearly established federal law.  *See Washington,* 422 F.3d at 873.  Nor did the state court's proceeding result in a decision that was based on an unreasonable determination of the evidence presented.  Moreover, an independent review of the record reveals that Petitioner's claim of ineffective assistance of counsel is without merit.

### 3.  Claim Two: use of Petitioner's prior conviction in determining sentence

Petitioner claims that the trial court's use of Petitioner's prior convictions to impose an aggravated sentence violated the "United States of Arizona [sic] constitutions" and "Amendment V." (Petition, p. 6)    Respondents contend that Petitioner failed to exhaust this claim because he failed to fairly present the federal nature of his claim to the state court.

In his PCR Petition, Petitioner argued that the use of his prior convictions in determining his sentence violated "the United States of Arizona [sic] constitutions." (Answer, Ex. Y) Petitioner's petition for review filed with the Arizona Court of Appeals includes virtually identical language as his PCR Petition regarding this claim.  Petitioner did not assert any violation of the Fifth Amendment of the United States Constitution before the state court, nor did he cite federal cases or state cases that engaged in a federal constitutional analysis of the issue.  *See Fields,* 401 F.3d at 1021 ("In order to alert the state court, a petitioner must make reference to provisions of the federal Constitution or must cite either federal or state case law that engages in a federal constitutional analysis.").  Further, Respondents correctly point out that the trial court addressed Petitioner's Claim Two as a state law claim.[10]  (Answer, p. 17) To any extent that Petitioner may argue that reference to

---

[10]It is well-settled that "it is not the province of a federal habeas court to re-examine state court determinations on state law questions."  *Estelle v. McGuire,* 502 U.S. 62, 67 (1991).  Therefore, federal habeas review is not available for Petitioner's claims if they do

the "United States of [sic] Arizona constitutions" included reference to the United States Constitution, such argument is unavailing given that sole reference to the United States Constitution without more does not satisfy the fair presentment requirement.  *See Fields,* 401 F.3d at 1021 ("Petitioner's mere mention of the federal Constitution as a whole, without specifying an applicable provision, or an underlying federal legal theory, does not suffice to exhaust the federal claim."); *Castillo,* 393 F.3d at 999 ("Mere general appeals to broad constitutional principles...do not establish exhaustion.").  Petitioner's failure to fairly present the state court with the federal nature of his Claim Two renders that claim unexhausted for purposes of federal habeas review.  Further, Petitioner is now barred pursuant to Rule 32.2(a) of the Arizona Rules of Criminal Procedure from returning to state court and, thus, Petitioner is procedurally barred from pursuing such claim here.  *See Coleman,* 501 U.S. at 732, 735 n.1.  *See also Franklin*, 290 F.3d at 1230-1231 ("the procedural default rule barring consideration of a federal claim applies...if it is clear that the state court would hold the claim procedurally barred.").  Petitioner also fails to show cause or prejudice for the default.

## III.  CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the District Court deny Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1).

Pursuant to 28 U.S.C. §636(B), any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. If objections are filed, the parties should use the following case number: **CV-04-2889-PHX-SRB**.

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived.  *See United States v. Reyna-Tapia,* 328 F.3d 1114,

---

not involve the violation of a federal constitutional or statutory right.  *See Estelle*, 502 U.S. at 67.

1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

      The Clerk of Court is directed to send a copy of this Report and Recommendation to the parties and/or their counsel.

      DATED this 18th day of January, 2007.

 

_____

Héctor C. Estrada
United States Magistrate Judge